Chase Home Fin., LLC v. Maclean, No. 424-6-10 Rdcv (Teachout, J., Jan. 31, 2012)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

**SUPERIOR COURT**                                    **CIVIL DIVISION**
**Rutland Unit**                                    **Docket No. 424-6-10 Rdcv**


**CHASE HOME FINANCE, LLC**
    **Plaintiff**

v.

**STEVEN P. MACLEAN, et al.,**
    **Defendants**


### DECISION
### Motion for Reconsideration
### regarding
### Priority of Association Lien

The issue before the Court is the extent of the priority of the condominium association lien over the plaintiff's first mortgage. This is a mortgage foreclosure case in which Plaintiff Chase Home Finance seeks foreclosure on its first mortgage. The property is a condominium unit, and the Condominium Association responded to the suit with a cross-claim for foreclosure on its unpaid condominium association fees.

Both foreclosing parties are entitled to judgment, but a dispute arose in the course of preparation of the form of judgment. Chase acknowledges the Association's priority for its lien for the period of 6 months prior to the filing of the Association's cross-claim, but not as to the amounts that accrued during the pendency of the case. The Association claims priority of its lien commencing 6 months prior to the filing, and continuing throughout the case.

This Court ruled in favor of the Association on July 27, 2011, adopting the reasoning in a trial court opinion on the issue in *Wells Fargo Bank v. Nancy Schunk, et al,* No. 193-4-10 Wmcv (Vt. Super Ct. April 28, 2011) (Wesley, J). A motion for reconsideration was filed and this Court heard oral argument on the issue on November 30, 2011. Chase was represented by Attorney Joshua Lobe, and the Association was represented by Attorney William Meub.

Two other written trial court decisions have since been made on the issue, both in favor of the first mortgage holder's position. *Vermont Housing Finance Authority v. Gail H. Coffey, et al.,* S0367-11 CnC (Vt. Super Ct. Aug. 11, 2011) (Toor, J.), and *EverHome Mortgage Company v. Robert G. Murphy, et al.,* No. 115-3-10 Bncv (Vt. Super. Ct. Dec. 6, 2011) (Hayes, J.).

Upon reconsideration and further reflection, this Court declines to change its ruling, partly for the reasons set forth in Judge Wesley's ruling in *Schunk*, and also for the reasons set forth below.

The analysis calls for statutory construction of 27A V.S.A. Sec. 3-116 and harmonization of that section on Lien for Assessment from the Uniform Common Interests Ownership Act with the statutory scheme for mortgage foreclosures set forth in Title 12. Section 3-116 is part of a uniform law drafted by a national organization and designed for use in a large number of states, which have a variety of different foreclosure statutes. As the Uniform Comment states with respect to the lien priority issue, "the law of each State should be reviewed and amended when necessary." No legislative history has been brought to the Court's attention indicating that the Vermont Legislature, in adopting the uniform act, gave particular attention to section 3-116 (b)(3) on the priority of an association's lien within the context of Vermont foreclosure procedures.

This context has implications for the manner in which the statute is interpreted, as it is unlikely that the Vermont Legislature has made a specific policy determination on the specific issue at hand, although it did make a policy choice to adopt the general framework for handling association liens when it adopted the uniform law. What is likely is that there was no specific focus on the part of the Vermont Legislature on the particular issue presented in this case, with the result that the courts are left with the task of interpreting the statute in a manner that makes sense of the language and furthers the statutory purpose. In conducting such an interpretation, it is important to consider not just the specific language of one subsection of the uniform law, but the operation of the law as a whole, with particular attention to the interaction with Vermont foreclosure law.

While the plain language of a portion of subsection (3) of subparagraph (b) of Section 3-116 is clear as to the 6-month period prior to the filing of the association's cross-claim, the situation with respect to the period after the filing, specifically between filing and sale, is not addressed. The statute is actually silent as to this period. The analyses in the *Coffey* and *Murphy* decisions rely on the principle that the 6-month priority was an exception to the general rule of first in time is first in right, and that exceptions should be narrowly construed. The *Schunk* analysis proceeds from the starting point that the statutory provision represents a balance of interests between the first mortgage holder's interests and that of the condominium association, and proceeds to analyze those interests in context. It does not see the 6-month period as a limited exception, but sees the entire provision as a balancing of interests.

This approach is grounded in the explanation of Uniform Law Comment 2: "A significant departure from existing practice, the six months' priority for the assessment lien strikes an equitable balance between the need to enforce collection of unpaid assessments and the obvious necessity for protecting the priority of the security interests of the lenders." The Comment proceeds to address the practical options for lenders when the situation arises, such as to establish escrow requirements or to pay the fees themselves, both of which would maintain the payment of condominium assessments to avoid weakening of the infrastructure of the common interest community. These options suggest the continuation of the association's priority.

The statute and Comment 2 make clear that the condominium lien does not get the same full priority as real estate taxes or other governmental assessments do, but it does get a special priority at a level between the government and the first mortgage holder in order to strike an

equitable balance between its need to maintain the infrastructure of a common interest community—which is akin to the purpose of real estate taxes and governmental assessments—and the interest of the first mortgage holders, who are in a position to protect themselves with respect to such charges. Moreover, the first lender is on notice of the priority of the association lien by virtue of the Declaration and 27A V.S.A. Sec 3-116 (d): "Recording the declaration constitutes record notice and perfection of the lien. No further recording of any claim or lien for assessment under this section is required." By virtue of section 3-116 (b)(3), they are also on notice of the six-month reachback provision.

I will not repeat here the reasoning set forth in the *Schunk* decision, which this Court continues to adopt as sound, but will make one comment on it. In footnote 1, the Court took judicial notice of the current climate in foreclosure practice and its effect on the lack of predictability in the length of time necessary for disposal of a foreclosure case. The fact that a number of factors have converged to make some foreclosure cases proceed more slowly than they might otherwise should have no impact on the legal interpretation of the statute, and indeed the analysis in *Schunk* is sound even without that observation.

If a residential foreclosure case proceeds as fast as it possibly can under Title 12, it takes a minimum of approximately 9 months, with one year being a realistic norm. Under the *Schunk* analysis, the uniform law drafters created a priority for condominium associations so that they could meet their ongoing expenses, and made that priority retroactive for six months, in order to avoid an interruption in the association's ability to meet its ongoing expenses. The lenders are in a position to protect themselves as noted in the Comment, whereas the common interest communities, despite having a lien for assessments that is superior to the first lender's mortgage, have no means of protection from losing needed assessments altogether if a property becomes less valuable than the amount due on the first mortgage, even if the foreclosure case only lasts 9 months, unless the priority of the association lien continues throughout the pendency of the case.

Actually, associations do have an alternate means of protecting themselves, and this should be considered in construing the statute. That is, there is nothing to prevent an association from bringing a new foreclosure action every six months, throughout the life of the lender's foreclosure case, in order to obtain priority for its lien for every six month period. This is permissible under the statute, and would maintain the continuing priority of the association's lien. However, this makes no economic sense, as it increases expenses and attorneys' fees for all parties concerned—the association, the owner, the first lender, and other parties to the case--and is contrary to the goal of judicial economy. It makes more sense to construe the statute as providing for an association lien for assessments to have a priority over a first mortgage for the period from 6 months prior to the association's filing of its first foreclosure action throughout the pendency of the action. This explains why the statute is silent as to that period: the priority of the association lien is created by the statutory scheme, and the 6 month provision expands its reach retroactively to 6 months prior to filing. It is an expansion of the priority, and not an exception to it.

It should also be noted that Sec 3-116 has application and effect in other circumstances beyond a mortgage foreclosure action brought by the first lender. For example, when the first lender has not filed a foreclosure action but the owner has stopped paying condominium fees and

the association is the first to file a foreclosure action, the statute requires the association to notify the first lender: "The association's lien may be foreclosed pursuant to section 4531a of Title 12 in which case the association shall notify all the lienholders of the affected unit of its action." 27A V.S.A. Sec 3-116 (i). This demonstrates the effect of the overall scheme: the association is required to give notice to the first lender so that the first lender can respond to protect itself from the fact that the association's lien has priority status over its first lender security interest, and will continue to do so. This makes the Comment make sense: if the priority status of the association lien is going to continue to be superior to that of the first lender, the first lender needs notice so that it can take action to protect its interest as described in the Comment.

For the reasons set forth above, after full reconsideration, the Court declines to change its ruling of July 27, 2011.

Dated at Rutland, Vermont this 31st day of January, 2012.

_____
Hon. Mary Miles Teachout
Superior Judge

4